UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NXIVM Corporation,

                     Plaintiff,

           -vs-

TONI  FOLEY, JOSEPH O'HARA,
JOHN TIGHE, SUZANNA ANDREWS,
JAMES ODATO, and JOHN DOES 1-59,

                   Defendants.
_____

**COMPLAINT**

Civil Action No.:

TRIAL BY JURY
DEMANDED ON
ALL ISSUES

     NXIVM Corporation (hereinafter referred to as "NXIVM" or "Plaintiff"), for its Complaint against defendants Toni Foley, Joseph O'Hara, John Tighe, Suzanna Andrews, James Odato, and John Does 1 through 59 (hereinafter collectively referred to as "Defendants"), hereby alleges upon information and belief as follows:

<u>THE PARTIES</u>

     1.     Plaintiff NXIVM is a Delaware corporation with its principal place of business at 455 New Karner Road in Albany, New York.  NXIVM was formerly known as Executive Success Programs (hereinafter "ESP") and was founded in 1998 by Nancy Salzman and Keith Raniere.  NXIVM is engaged in a for-profit business which sells professional success training programs.

     2.     Defendant Toni Foley (hereinafter "Foley" or "Defendant Foley") is an individual currently residing at 13 Santa Circle in Pittsford, New York. Defendant Foley was formerly known as Toni Natalie, and she is a former client of NXIVM.

     3.     Defendant Joseph O'Hara (hereinafter "O'Hara" or "Defendant O'Hara") is an individual who currently resides at 24 Ingersoll Avenue in Schenectady, New York.

Defendant O'Hara is an attorney but he is not licensed to practice in New York State. Defendant O'Hara previously provided legal services to NXIVM and/or related parties by misrepresenting that he was admitted to practice law in New York State.

4.      Defendant John Tighe (hereinafter "Tighe" or "Defendant Tighe") is an individual currently residing at 496 Rowland Street in Ballston Spa, New York. Defendant Tighe is the author of an online blog titled "Saratoga in Decline," which he started on or about October 27, 2009.

5.      Defendant Suzanna Andrews (hereinafter "Andrews" or "Defendant Andrews") is an individual currently residing at 535 West 110th Street, Apartment 12J in New York, New York. Andrews authored an article concerning NXIVM that appeared in the magazine "Vanity Fair" in or around October 13, 2010.

6.      Defendant James Odato (hereinafter "Odato" or "Defendant Odato") is an individual currently residing at 1161 Ardsley Road in Schenectady, New York. Defendant Odato is employed by the newspaper "Times Union" published in Albany, New York, and in that capacity, he has authored numerous articles concerning NXIVM dating back to at least September 2007.

7.      Defendants John Does 1-59 are individuals whose identity is currently unknown, but who accessed NXIVM's Password Protected Website without authorization on at least one occasion between 2006 and 2011, from the following IP addresses, at least sixteen of which are located in the Western District of New York: 141.154.235.238, 141.154.237.250, 141.154.242.38, 151.203.197.173, 151.203.234.64, 151.203.9.236, 166.214.24.57, 166.214.34.29, 166.214.36.178, 167.166.80.145, 172.131.55.185, 172.135.47.131, 172.147.167.71, 172.163.104.227, 172.163.218.27, 172.164.14.43, 172.164.147.210, 205.203.128.142, 208.105.218.190, 208.105.222.113, 208.125.146.90,

208.125.160.158,   208.125.160.90,   24.105.183.6,   24.105.186.129,   24.149.58.165, 24.18.243.255,  24.195.247.33,  24.92.48.14,  24.92.51.39,  24.97.136.234,  24.97.138.86, 64.115.124.74,   64.246.146.33,   65.37.35.176,   65.96.24.218,   66.66.121.181, 67.248.49.143,   68.196.159.132,   68.233.75.226,   69.2.120.11,   72.10.215.229, 72.226.68.163, 72.43.11.34, 72.43.251.52, 72.43.251.60, 72.79.105.201, 74.47.146.147, 74.47.146.70, 74.47.147.117, 74.47.149.101, 74.47.150.81, 74.47.151.77, 74.70.120.156, 74.70.25.182, 74.70.75.247, 74.76.145.115, 74.76.149.7 and 76.167.234.97.

## JURISDICTION AND VENUE

8.     Plaintiff brings claims under 18 U.S.C. §1030, Computer Fraud and Abuse Act, and 18 U.S.C. §2701, *et seq.*, Stored Communications Act, and related claims under New York State law.  This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and may exercise supplemental jurisdiction pursuant to 28 U.S.C. §1367 with respect to the state law claims.

9.     Venue is appropriate in the Western District of New York pursuant to 28 U.S.C. §1391(b)(1) because Defendant Foley is a resident of said District and all defendants reside in New York State.  In addition, pursuant to 28 U.S.C. §1391(b)(2), a substantial part of the events or omissions giving rise to the claim occurred in the Western District of New York.

## NXIVM's CONFIDENTIAL AND PROPRIETARY BUSINESS INFORMATION

10.     NXIVM conducts professional success training programs for executives and other individuals concerned with developing their skills and achieving their goals.  NXIVM's programs provide training in areas such as internal ethics, logical analysis and problem-solving skills, and are based primarily on a patent pending system, called Rational Inquiry™.

11.     First Principles owns the Rational Inquiry™ intellectual property materials.  It licenses them to NXIVM for NXIVM's use.

12.     NXIVM is required by its agreement with First Principles to protect and maintain the confidentiality of its materials.

13.     NXIVM's stock in trade is technology, methods, procedures, discoveries, understandings, course work, coaching materials and other aspects of a highly developed body of knowledge embodied, in part, in written materials NXIVM has developed over many years.

14.     This information and property was developed by NXIVM over time and at great expense.  It is unique and proprietary to NXIVM, is not available to the general public, and provides NXIVM with a distinct and extremely valuable advantage over its competitors.

15.     NXIVM is able to charge substantial fees for its training services and programs, based on the company's confidential and proprietary information and materials. For instance, NXIVM charges $2700-$3000, depending on location, for a basic Five Day Intensive® and $7500 for the basic Sixteen Day Intensive®.

16.     NXIVM's primary asset is an innovative educational system, including its methodologies, its written materials, its complex business and educational philosophy and its client list.

17.     NXIVM will not permit a single person to view or experience any of its course material, except for introductory information, without signing a Confidentiality Agreement.

18.     NXIVM requires any person participating in a NXIVM event to sign at least once what NXIVM calls a "long-form confidentiality agreement."

19.     NXIVM will not permit its visitors, members of the public, outside consultants

or accountants to view any of its course or course related materials, or any information about any of its clients, without agreeing to such language.

20.    NXIVM requires any participant who formally withdraws from NXIVM's business program or becomes hostile to NXIVM's mission to return all written materials and revokes their access to NXIVM's Password Protected Website.

21.    NXIVM does not actively advertise its courses and instead generally relies upon word-of-mouth to reach prospective participants.

22.    NXIVM sells its products through Field Trainers, of which there are currently twelve, who are contracted trained sales managers specializing in the company's products, protocols, sales tools and policies.

23.    NXIVM pays a substantial amount to the Field Trainers in order to maintain and grow their client lists.

24.    The Field Trainers each establish a client list which NXIVM maintains, which is the product of their marketing efforts.

25.    These lists, taken in combination, comprise the entire NXIVM client list.

26.    The confidentiality of NXIVM's client list is critical, and NXIVM goes to great lengths to guard the confidentiality of each client's personal identifying information.

27.    The client list represents all of those people who have enrolled as clients of NXIVM through its network.  Because of both the nature of NIXVM's business model, and the frequent request of these individuals, it is vital that their identities remain confidential.

28.    The client list is highly valuable and its creation has taken years of effort to cultivate and develop through a highly personalized, time-intensive and expensive process that is unique to NXIVM.

29.     A large amount of NXIVM's current income is a direct result of NXIVM's continued relationship with its clients. A large number of NXIVM's clients continue to take higher educational seminars every year.

30.     NXIVM's competitors are other companies and individuals who offer self-fulfillment courses to individuals or corporations.   These competitors offer services including: behavior change, relationship building, business consulting, change management, cognitive therapy, communications specialists, communications theory, corporate restructuring, corporate strategy, corporate turnaround, cost reduction/value optimization, counseling (non-medical), creative thinking and innovative thinking workshops, creating thinking consulting, critical thinking analysis, "deprogramming," entrepreneurship, ethics consulting for businesses, ethics consulting for government, executive coaching, executive training, existential humanistic psychology, financial restructuring, goal-oriented brief therapy, goals achievement, government consulting, government streamlining, holistic health, human perception, human performance, human resources consulting/outsourcing, humanistic psychology, hypnotherapy, innovation/research and development, leadership training, motivational speaking, optimal functioning training, personal coaching, personal development, personal development coaching, personal growth, positive psychology, problem solving coaching, problem solving consulting, problem solving workshops, professional coaching for business, psychology psychiatry, self-help, social work, sports performance, sports psychology, succession and governance, system design, system sustainability, systems analysis, systems thinking, team building, team development, team integration, think tanks, and trainings and seminars in persistence and motivation.

31.     All clients who attend a NXIVM seminar or course, and all of NXIVM's staff, are required to sign a Confidentiality Agreement wherein they agree not to share the content of NXIVM's seminars as well as the materials and information they have access to during and after those seminars, including the other individuals they come into contact with directly, or indirectly.  The Confidentiality Agreement that all NXIVM clients and staff must sign defines NXIVM's confidential and proprietary information to include the following:

> all proprietary and confidential information generally associated with TRAINING and communicated to RECIPIENT during the course of an Instruction, said proprietary and confidential information pertaining to, *inter alia*, inventions, Improvements, copyrighted material, trademark material, Trade Secret material, software, hardware, technical information, business information, financial information, marketing information, information specifically identified to RECIPIENT as proprietary or confidential, and any information which RECIPIENT should reasonably regard as proprietary or confidential wherein said proprietary or confidential information is communicated to RECIPIENT in the form of, *inter alia*, written materials, oral disclosures, verbal communications, visual communications, graphic materials, pictorial materials, data files, and software.

## NXIVM'S PASSWORD PROTECTED WEBSITE

32.     NXIVM established an interactive confidential and proprietary website (hereinafter "Password Protected Website"), which is saved on NXIVM's server and maintained by NXIVM's Information Technology staff for the exclusive use of its clients and staff.

33.     NXIVM created this Password Protected Website for the purposes of communicating privately to its clients and staff, providing its clients an interactive forum to communicate with other NXIVM clients and staff, and to view schedules of upcoming NXIVM courses and events, among other available resources.  NXIVM's Password Protected Website can only be accessed with a NXIVM username and password, or by using a specialized formula, with varying degrees of access depending upon a user's role within NXIVM.

34.     The NXIVM Password Protected Website is interactive and allows members to send information and feedback to the company, enroll in upcoming events, and discuss and comment with other members regarding NXIVM organized social events.

35.     The level of access to the Password Protected Website varies depending upon a user's role within NXIVM.  For example, a NXIVM client who attends only one or two NXIVM courses or events will only have the most basic access to NXIVM's Password Protected Website.  A NXIVM client with the most basic level of access may send messages to NXIVM staff and other NXIVM members, and view NXIVM's Calendar of Events, information about the events and enroll to attend the events.

36.     A NXIVM member with the most basic level of access to the Password Protected Website should <u>not</u> be able to view NXIVM's confidential and proprietary coach list or client list, nor will such a member have access to other types of confidential and proprietary information and documents.

37.     In contrast, NXIVM clients who have chosen to take a more active role in the company and who have earned trusted roles are given a "higher" level of access to the Password Protected Website.

38.     For example, one of the more active roles within the company is that of "coach."  A coach is an individual who has chosen to work with NXIVM professionally in an apprentice-type role.  There is an application to attain this role which must be earned, and there is a level of commitment the individual accepts in order to assume this role within the company.

39.     A NXIVM client who earns the role and responsibilities as a coach within NXIVM will have broader access to NXIVM's Password Protected Website.  This will include access to confidential and proprietary information stored on the website based on

what is necessary to facilitate their role, including NXIVM's regularly updated coach list representing a list of all active coaches in the company.

40.     The coach list can be accessed from a page on the Password Protected Website where it is generated from NXIVM's database.  When a website user requests a specific subset of information, such as a list of all NXIVM coaches, a list is generated from the database.  Once a user has generated this list, it can be copied and saved by the user for future use.   This information constitutes NXIVM's confidential and proprietary information, and is not available to NXIVM clients who are below the level of coach.

41.     In addition, the client list can be accessed by a limited number of individuals in the organization who need the list in order to perform their functions.  This information constitutes NXIVM's confidential and proprietary information, and is not available to any other members of NXIVM.

42.     NXIVM's Password Protected Website also contains a Knowledge Base page, which allows users to access and download a number of NXIVM's confidential and proprietary documents.  Documents on this page include NXIVM's business policies and procedures, and internal higher-level promotional material and tools.   Each of the documents contained on this page is NXIVM's confidential and proprietary information, and is not available to NXIVM clients or coaches who do not need the information in order to perform their role.

43.     NXIVM's Password Protected Website also contains a Coach Evaluation Tool, which was developed specifically by NXIVM and is a tool for instructors to measure the skill sets of NXIVM coaches.  NXIVM's Coach Evaluation tool is unique to NXIVM, and is NXIVM's confidential and proprietary property.   This information is not available to NXIVM clients who are below the level of coach.

44.     NXIVM's Password Protected Website also contains NXIVM's confidential and proprietary humanities questionnaire, which NXIVM clients fill out to help NXIVM's humanities department evaluate a client's specific interests.

45.     NXIVM's Password Protected Website also contains Goal Reporting Tools, which allow a coach to record, update and track the people they coach and their own short and long term goals.  This information constitutes NXIVM's confidential and proprietary information, and it is not available to NXIVM clients who are below the level of coach.

46.     NXIVM's Password Protected Website also contains a Magnificence Reports page.  The purpose of this page is to allow NXIVM clients to send messages to other NXIVM clients as well as to NXIVM's leaders and staff.  As part of its investigation, discussed further below, Plaintiff discovered that a website user could improperly access code from this page and create an unofficial client list.

47.     The Password Protected Website also contains a Calendar of Events and a Humanities Events page where NXIVM members can view all of NXIVM's upcoming courses and events. NXIVM's Calendar of Events and higher-level trainings are private events that are not open or accessible to the public.

48.     The Password Protected Website also contains a Vanguard Week information site, which at the time of Defendants' illegal access contained information regarding the dates, location and cost of attending the upcoming Vanguard Week, which is NXIVM's major annual corporate event.  An authorized user could enroll in Vanguard Week through the Password Protected Website.  The event is a private event that is not open or accessible to the public.

49.     The Password Protected Website also contains a Testimonials page, which contains video testimonials by NXIVM clients for higher-level curriculum, only intended for

NXIVM's existing and qualified clients.  At the time that Defendants illegally accessed the Password Protected Website, this page contained a video testimonial entitled "Because." The video testimonials included on this page, including "Because," are NXIVM's proprietary and confidential property.

50.     The information contained on NXIVM's Password Protected Website is extremely valuable to NXIVM.  For over a decade, NXIVM has invested extensive time and money into creating, gathering, maintaining and updating the information contained in its Password Protected Website, including its client and coach lists, and it requires considerable time to routinely update the client and coach lists and database so that all information is current.

51.     NXIVM has also spent extensive time and money developing other confidential and proprietary information on its website, including, but not limited to its humanities questionnaire, Coach Evaluation Tool, Goal Reporting Tools, Knowledge Base, Magnificence Reports, and Video Testimonials, among others.

<u>DEFENDANTS' ACCESS TO NXIVM'S PASSWORD PROTECTED WEBSITE</u>

52.     In late 2011, suspicions arose as to whether unauthorized users were accessing the Password Protected Website.

53.     An investigation was conducted, and in January 2012, a client of NXIVM who was on good terms with NXIVM, but who had not recently been active (hereinafter referred to as "Client P"), confirmed that she had not used her username and password since 2003, and yet NXIVM's records showed use of Client P's username and password through 2011.

54.     Client P had been a NXIVM coach and therefore had access to the confidential and proprietary information and documents on NXIVM's Password Protected Website as described above, including NXIVM's coach list, Calendar of Events,

Humanities Events, Vanguard Week information, Magnificence Reports, humanities questionnaire, Coach Evaluation Tool, Goal Reporting Tools, parts of the Knowledge Base and Video Testimonials, among others.

55.    Client P further confirmed that she had not given her username or password to anyone else, nor had she given authority to anyone to use her username or password. In any event, Client P would not have been authorized to share her username or password with anyone, as the information is unique to an individual and required to be kept confidential.

56.    As a result, it became evident that unauthorized users had been accessing the Password Protected Website using Client P's username and password.  Upon learning this information, Plaintiff conducted a further investigation to identify all occasions when Client P's username and password were used to access the Password Protected Website.

57.    The results of the investigation yielded evidence that Client P's username and password had been used to access the Password Protected Website on hundreds of occasions between 2006 and 2011.

58.    The investigation further showed that at times more than one user used Client P's username and password from different IP addresses, confirming that the Password Protected Website was being wrongfully accessed without authorization by multiple individuals acting in concert with each other. Upon information and belief, Defendants shared and exchanged Client P's username and password among themselves, and with others, for the purposes of accessing the Password Protected Website, and they aided and abetted each other and others in engaging in this unlawful conduct.

59.     The Password Protected Website contained NXIVM's confidential and proprietary information, and upon information and belief, Defendants viewed and copied this information, including Plaintiff's client and coach lists at the time that they illegally accessed the Password Protected Website.

60.     Plaintiff and its investigators spent significant time and Plaintiff incurred significant expense investigating the repeated wrongful access to the Password Protected Website.  As a result of Defendants' misconduct, Plaintiff has been damaged in an amount to be determined at trial.

61.     Plaintiff's investigators reviewed the IP addresses that were used by the individuals who accessed the Password Protected Website using Client P's username and password, and were able to match some of those IP addresses to IP addresses that were known to be used by the Defendants.  However, the vast majority of IP addresses remain unidentified at the present time, and further investigation and discovery is required in order to expose the full extent of the illegal scheme.  It is believed that the Defendants herein illegally accessed the website using different IP addresses over the course of many years. Identified below is the access with IP addresses known to be used by Defendants.

*Defendant Foley*

62.     On or about August 23, 2010, an individual accessed the Password Protected Website using Client P's username and password without authorization from IP address 173.86.169.21; on or about January 5, 2011, from IP address 74.46.60.59; and twice on or about March 15, 2011, from IP address 74.47.145.18.  Upon information and belief, Defendant Foley used all three of those IP addresses and accessed the Password Protected Website on those dates.  Upon information and belief, Defendant Foley was located in the Western District of New York when she illegally accessed the Password

Protected Website.

63.     NXIVM's Information Technology personnel reviewed the records for NXIVM's Password Protected Website and determined that, upon information and belief, Defendant Foley accessed, among other NXIVM information, NXIVM's coach list, NXIVM's Calendar of Events, Humanities Events page, Coach Evaluation Tool, and Vanguard Week information page.   In addition, upon information and belief, Defendant Foley accessed NXIVM's Magnificence Reports, and from that page on the Password Protected Website, she could improperly access code to create an unofficial client list.

*Defendant O'Hara*

64.     On or about February 3, 2010, an individual accessed the Password Protected Website using Client P's username and password without authorization from IP address 71.244.122.39; and twice on or about March 16, 2011, from IP address 96.236.44.171.   Upon information and belief, Defendant O'Hara used both IP addresses and accessed the Password Protected Website on those dates.

65.     On February 3, 2010, one of the above-identified dates that Defendant O'Hara accessed the Password Protected Website using the Client P username and password, Defendants O'Hara and Foley telephoned one another on at least twenty occasions and spoke multiple times by telephone both before and after the illegal access by O'Hara.   Upon information and belief, Defendant Foley was located in the Western District of New York during these telephone calls.

66.     NXIVM's Information Technology personnel reviewed the records for NXIVM's Password Protected Website and determined that, upon information and belief, Defendant O'Hara accessed, among other NXIVM information, NXIVM's   Calendar of Events and Humanities Events page.   In addition, upon information and belief, Defendant

O'Hara accessed NXIVM's Magnificence Reports, and from that page on the Password Protected Website, he could improperly access code to create an unofficial client list.

*Defendant Tighe*

67.    On or about July 29, 2010, August 1, 2010, twice on August 8, 2010, August 13, 2010, twice on August 17, 2010, August 23, 2010, August 28, 2010, September 4, 2010, September 7, 2010, September 13, 2010, September 16, 2010, October 3, 2010, October 9, 2010, October 11, 2010, October 23, 2010, October 25, 2010, and November 4, 2010, an individual accessed the Password Protected Website using Client P's username and password without authorization from IP address 72.226.58.91.   Upon information and belief, Defendant Tighe used that IP address and accessed the Password Protected Website on those dates.

68.    NXIVM's Information Technology personnel reviewed the records for NXIVM's Password Protected Website and determined that, upon information and belief, Defendant Tighe accessed, among other NXIVM information, NXIVM's coach list, NXIVM's Calendar of Events, Humanities Events page, humanities questionnaire, Goals Reporting Tool, Testimonials page including NXIVM's "Because" video testimonial, and NXIVM's Vanguard Week information page.

*Defendant Andrews*

69.    On or about July 9, 2010 and July 10, 2010, twice on or about August 9, 2010, and on or about September 10, 2010, an individual accessed the Password Protected Website using Client P's username and password without authorization from IP address 207.237.232.82.   Upon information and belief, Defendant Andrews used that IP address and accessed the Password Protected Website on those dates.

70.     NXIVM's Information Technology personnel reviewed the records for NXIVM's Password Protected Website and determined that, upon information and belief, Defendant Andrews accessed, among other NXIVM information, NXIVM's Magnificence Reports, NXIVM's coach list, and NXIVM's Vanguard Week information page.

*Defendant Odato*

71.     Defendant Odato is a writer for the Times Union and beginning in at least September 2007, began writing articles for the Times Union about NXIVM.   In all, Defendant Odato has written over thirty-five (35) articles on the topics of NXIVM and its leadership.

72.     Upon information and belief, Defendant Odato has been acquainted with Defendant O'Hara since at least February 2007.   Since that time, Odato and O'Hara have regularly communicated by telephone, and at times, by email.   Upon information and belief, Defendant Odato obtained Client P's username and password through Defendant O'Hara.

73.     On October 2, 2007, Defendant Odato and Defendant O'Hara spoke on the phone at approximately 4:07 p.m.

74.     About one hour later on October 2, 2007, at approximately 5:22 p.m., an individual accessed the Password Protected Website using Client P's username and password without authorization from IP address 167.166.23.253.   Upon information and belief, that IP address is registered to Defendant Odato's employer, the Times Union, and Defendant Odato was the individual who accessed the Password Protected Website from that IP address.

75.     NXIVM's Information Technology personnel reviewed the records for NXIVM's Password Protected Website and determined that, upon information and belief,

on October 2, 2007, Defendant Odato accessed, among other NXIVM information, NXIVM's Magnificence Reports on the Password Protected Website.   NXIVM's IT personnel have determined that from the Magnificence Reports page, Defendant Odato could improperly access computer code to create an unofficial list of NXIVM's clients.

76.    In addition, NXIVM's IT personnel have determined that additional pages from the NXIVM Password Protected Website were accessed on October 2, 2007, from IP address 167.166.23.253, including the Goal Reporting Tools, humanities questionnaire, and Vanguard Week information page.

77.    Six days after this unauthorized access, on October 8, 2007, Defendant Odato and another writer for the Times Union wrote a story concerning NXIVM.   In that article, they admitted that they had obtained a copy of NXIVM's client list.   The article identified two individuals as NXIVM "students".   The article further stated that these "students" were identified based on the list of NXIVM's clients that Defendant Odato and his Times Union co-author had obtained.

78.    As stated above, NXIVM's client list is proprietary and confidential and is not available to the public.   Upon information and belief, Defendant Odato used Client P's username and password to log into NXIVM's Password Protected Website on October 2, 2007, viewed NXIVM's confidential client list, and published the names of two NXIVM clients which were on this list in his article on October 8, 2007.

79.    The results of the investigation of NXIVM's IT personnel also yielded evidence that on or about October 8, 2007 (the same date Odato's article was published), an individual accessed the Password Protected Website using Client P's username and password without authorization from IP address 167.166.23.253.   Upon information and belief, Defendant Odato used that IP address, which is registered to his employer, the

Times Union, to access the Password Protected Website on the date that his article concerning NXIVM was published.

80.     NXIVM's Information Technology personnel reviewed the records for NXIVM's Password Protected Website and determined that, upon information and belief, on October 8, 2007, Defendant Odato accessed, among other NXIVM information, NXIVM's Magnificence Reports page, humanities questionnaire, and Humanities Events page.

81.     Thereafter, on May 2, 2008, at 11:23 a.m., Defendant O'Hara spoke by telephone with Defendant Odato.  Just over an hour later, at approximately 12:40 p.m., an individual accessed the Password Protected Website using Client P's username and password without authorization from IP address 167.166.80.201.  Upon information and belief, Defendant Odato used this IP address, which is registered to his employer, the Times Union, to access the Password Protected Website on that date.

82.     NXIVM's Information Technology personnel reviewed the records for NXIVM's Password Protected Website and determined that, upon information and belief, on May 2, 2008, Defendant Odato accessed, among other NXIVM information, NXIVM's Magnificence Reports page.

<u>DEFENDANTS' HARASSMENT OF NXIVM'S CLIENTS</u>

83.     As described above, Defendants repeatedly illegally accessed NXIVM's Password Protected Website without authorization, and then utilized that information to harm NXIVM and harass or attempt to harass NXIVM's clients.

84.     For example, Defendant Tighe wrongfully accessed the Password Protected Website and viewed NXIVM's Calendar of Events and Vanguard Week information page, which he then used to harass NXIVM's clients and staff.

85.     Specifically, Defendant Tighe showed up at NXIVM's annual private corporate retreat (Vanguard Week) in September 2010, which was held in Silver Bay, New York.   At that event, Defendant Tighe approached a group of NXIVM clients' children. When one of the children questioned who he was, Defendant Tighe stated that he picked up little children and ran away with them to protect them from a bad man, thus threatening to kidnap NXIVM clients' children.   As a result, police reports regarding Defendant Tighe's inappropriate conduct were filed.

86.     Defendant Tighe also showed up at NXIVM's annual private corporate retreat in September 2011, Nancy Salzman's private birthday parties in July 2010 and 2011, and at NXIVM's private corporate winter party in January 2011.   Defendant Tighe took photographs of NXIVM's members and vehicles at these events and included some of the photographs on his blog on a number of occasions along with derogatory statements about NXIVM and its clients.   Defendant Tighe made a statement on his blog "Saratoga in Decline" indicating his only purpose for attending NXIVM's events was to harass NXIVM's clients and staff.   Police reports were filed regarding Defendant Tighe's harassment of NXIVM's clients at these events.

87.     In addition, Defendants O'Hara, Foley, and Tighe, and others, targeted individuals on the client list to harass them and further harm NXIVM.

88.     In addition, Defendants O'Hara, Foley, and Tighe, and others, exchanged NXIVM's confidential and proprietary client and coach lists that were, upon information and belief, illegally copied from the Password Protected Website.

89.     These Defendants conspired with each other and others to communicate with the individuals identified on NXIVM's client list for the purpose of harassing NXIVM's clients and further harming NXIVM.

90.     Upon information and belief, Defendant O'Hara also sent NXIVM's client list to various members of the media, in a further effort to harass NXIVM clients and further harm NXIVM, and Defendants distributed NXIVM's client list to third parties to harass and further harm NXIVM.

91.     Defendant Tighe ultimately published information from a recent version of NXIVM's confidential coach list on his blog on August 7, 2011, which he had, upon information and belief, illegally obtained from the Password Protected Website.

92.     Along with publishing the names and contact information for all of NXIVM's current coaches, Defendant Tighe made derogatory statements about the individuals' names that he published.  The August 7, 2011 blog entry stated:

> [t]his list only includes the names and rank of current recruiters and coaches who actively prey and profit from the insecurities and weaknesses of their neighbors, business associates, friends and in the most extreme cases their own families including parents and even their own children.  I have no mercy or sympathy for these people at all.

### AS AND FOR A FIRST CAUSE OF ACTION
### [Computer Fraud and Abuse Act, 18 U.S.C. §1030, against All Defendants]

93.     Plaintiff repeats and realleges paragraphs 1 through 92 as though fully set forth herein.

94.     Upon information and belief, Defendants intentionally and without authorization accessed NXIVM's interactive Password Protected Website, database and server in violation of 18 U.S.C. §1030(a)(2)(C).

95.     NXIVM's computer server where its Password Protected Website and database are stored and the computers used by Defendants are "protected computers" under the Computer Fraud and Abuse Act, 18 U.S.C. §1030(e)(2), because they are used to transmit electronic communications affecting interstate or foreign commerce.

96.     Defendants were not authorized to access NXIVM's confidential and proprietary business information stored on NXIVM's computer server and the Password Protected Website.

97.     Despite the fact that Defendants lacked authority to access Plaintiff's computer server and the Password Protected Website, they intentionally used a NXIVM client's username and password (Client P's username and password) without authorization to access and view Plaintiff's confidential and proprietary information, including its client and coach lists, and such conduct caused Plaintiff damage and loss in violation of 18 U.S.C. §1030.

98.     Defendants exchanged Client P's username and password among themselves and third parties, including the media, for the purpose of encouraging and allowing others to illegally access the Password Protected Website and to view NXIVM's confidential and proprietary information in violation of 18 U.S.C. §1030(a)(6)(A).

99.     Defendants intentionally accessed the Password Protected Website without authorization to obtain NXIVM's confidential and proprietary information, including its client and coach lists, and other confidential and proprietary information so that they could harass and harm NXIVM and its clients by using and distributing that confidential and proprietary information to others, in violation of 18 U.S.C. §1030(a)(4).

100.    Defendants' conduct has caused Plaintiff damage pursuant to 18 U.S.C. §1030(e)(8) because Defendants copied, stole and otherwise impaired the integrity of confidential and proprietary information owned by NXIVM from the Password Protected Website, including NXIVM's client and coach lists.

101.    Defendants' conduct has caused Plaintiff damage pursuant to 18 U.S.C. §1030(e)(8) because Defendants impaired the client privacy confidence.

102.    Defendants' conduct has also resulted in a loss pursuant to 18 U.S.C. §1030(e)(11) in an amount to be determined at trial, but not less than a $5,000 loss in a one year period due to Plaintiff's investigation and other related expenses.   Among other damages, and representing a minimum level of damages, Plaintiff retained outside experts who incurred costs in excess of thirty thousand dollars ($30,000.00) investigating Defendants' misconduct, including approximately eighteen thousand dollars ($18,000.00) incurred during the past year, and Plaintiff incurred in excess of ten thousand dollars ($10,000.00) in costs related to its internal IT personnel.   In all, Plaintiff's damages were much higher and extensive, resulting in a loss in an amount that will be proven at trial.

103.    By reason of the foregoing, Plaintiff is entitled to damages and injunctive relief under 18 U.S.C. § 1030(g).

## AS AND FOR A SECOND CAUSE OF ACTION
**[Stored Communications Act, 18 U.S.C. §2701, *et seq.*, against All Defendants]**

104.    Plaintiff repeats and realleges paragraphs 1 through 103 as though fully set forth herein.

105.    Upon information and belief, Defendants intentionally and without authorization accessed NXIVM's interactive Password Protected Website, database and server.

106.    The Password Protected Website, computer server, database and related equipment constitutes a "facility" providing "electronic communications service" as that term is defined under 18 U.S.C. §2510(15) because the Password Protected Website provides its client-users with the ability to send and receive electronic communications to one another and to NXIVM's leadership.   The Password Protected Website also allows users to sign up for upcoming events and to publish statements regarding past and upcoming events.

107.   The Password Protected Website and server constitutes an "electronic storage" device as that term is defined under 18 U.S.C. §2510(17) because the Password Protected Website, database and server provide temporary, intermediate storage of NXIVM's proprietary information, including NXIVM's client and coach lists and messages exchanged among the website's users.   NXIVM's proprietary and confidential information, including its personal and public messages, are electronically communicated between NXIVM's leadership and its members when NXIVM's users sign into the Password Protected Website and review and enter information into the website.

108.   Defendants intentionally accessed the Password Protected Website, database and server and the confidential and proprietary materials contained on the Password Protected Website by using a confidential log-in and password without authorization.   Upon information and belief, Defendants intentionally accessed and copied confidential electronic communications including NXIVM's confidential client and coach lists and other proprietary information that was stored on the Password Protected Website, database and server.

109.   Defendants illegally accessed NXIVM's confidential and proprietary information, including its client and coach lists, for the purpose of distributing that confidential information to third parties, including the media, and in order to harass and harm NXIVM.

110.   Accordingly, Defendants intentionally and knowingly violated 18 U.S.C. §2701.

111.   By reason of the foregoing and the civil private right of action provided by 18 U.S.C. §2707, Defendants are liable to NXIVM for compensatory damages, punitive damages, attorneys' fees and costs, and NXIVM is entitled to injunctive relief.

## AS AND FOR A THIRD CAUSE OF ACTION
### [Misappropriation of Trade Secrets against Defendants O'Hara, Foley and Tighe]

112.   Plaintiff repeats and realleges paragraphs 1 through 111 as though fully set forth herein.

113.   NXIVM possesses confidential and proprietary business materials, including information contained on the Password Protected Website such as its regularly updated confidential coach list, Magnificence Reports with the related computer code containing NXIVM's full client list, Knowledge Base, Coach Evaluation Tools, humanities questionnaire, Testimonials and Goal Reporting Tools.

114.   Plaintiff has spent years and substantial cost developing, maintaining and updating NXIVM's current coach and client lists because the great majority of NXIVM's clients develop through referrals from existing clients.

115.   Many of NXIVM's clients greatly value their privacy, and go to great expense to ensure their privacy.

116.   NXIVM goes to great lengths to keep its proprietary and confidential coach and client lists a secret from anyone who is not a client of NXIVM, by allowing only a very restricted group of clients and staff who need to access the information to satisfy their roles to access the lists, and requires each of them to sign confidentiality agreements.

117.   NXIVM similarly has also spent considerable time and money developing its Magnificence Reports and its related computer code containing NXIVM's client list, Knowledge Base, Coach Evaluation Tools, humanities questionnaire, Testimonials and Goal Reporting Tools.

118.   Defendants intentionally and without authorization illegally accessed the Password Protected Website, its database and server.

119.   Upon information and belief, after illegally accessing the Password Protected

Website, Defendants viewed and copied NXIVM's confidential and proprietary business information, including NXIVM's confidential client and coach lists and distributed that information to third parties, including members of the media for the purpose of harming NXIVM.

120.   Defendants used the confidential and proprietary business information contained on the Password Protected website, including NXIVM's coach and client lists, to harass NXIVM's clients.

121.   For example, Defendant Tighe published confidential information from NXIVM's current coach list on his public blog along with derogatory statements about the organization and its clients on August 7, 2011.   This represents just one instance of Defendant Tighe's frequent publication of the identity of NXIVM clients.

122.   By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, but in an amount no less than one million dollars ($1,000,000.00).

### AS AND FOR A FOURTH CAUSE OF ACTION
**[Conversion against Defendants O'Hara, Foley and Tighe]**

123.   Plaintiff repeats and realleges paragraphs 1 through 122 as though fully set forth herein.

124.   Defendants illegally and intentionally obtained possession of NXIVM's confidential and proprietary property, including NXIVM's confidential coach and client lists, among other confidential information, and converted that property to their own use to the exclusion and impairment of Plaintiff's rights, without compensation to the Plaintiff.

125.   Defendants' actions were willful and were made with the intent to harm the Plaintiff.

126.   By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, but in an amount no less than one million dollars ($1,000,000.00).

## AS AND FOR A FIFTH CAUSE OF ACTION
### [Tortious Interference with Contractual Relations against Defendants O'Hara, Foley and Tighe]

127.   Plaintiff repeats and realleges paragraphs 1 through 126 as though fully set forth herein.

128.   NXIVM's current coach and client lists identify individuals who have participated in NXIVM's seminars and other events, and have an ongoing business relationship with NXIVM.  These individuals have contracts with NXIVM.

129.   Defendants illegally acquired NXIVM's coach and client lists, and thereby obtained names and contact information of each of NXIVM's current coaches and clients.

130.   On August 7, 2011, Defendant Tighe published information from NXIVM's recently updated confidential coach list on his public blog, wherein he routinely made disparaging statements about NXIVM's leadership and clients.  Defendant Tighe published NXIVM's confidential coach list for the purpose of intimidating current NXIVM coaches into ending their relationship with NXIVM.

131.   In addition, Defendants O'Hara, Foley, Tighe, and others, conspired with each other to pursue a plan to communicate with the individuals identified on NXIVM's client and coach lists for the purpose of harassing and intimidating said individuals into disassociating themselves with NXIVM.

132.   Defendant Tighe also directly contacted NXIVM's coaches and clients and showed up at NXIVM's private events for the purpose of harassing NXIVM's clients and for the purpose of encouraging them to terminate their contractual relationships with NXIVM.

133.   As a result of Defendants' tactics to harass and intimidate NXIVM's coaches and clients, a number of NXIVM's clients ended their involvement with NXIVM and breached their contracts with NXIVM.

134.    By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, but in an amount no less than one million dollars ($1,000,000.00).

**AS AND FOR A SIXTH CAUSE OF ACTION**
**[Tortious Interference with Prospective Business Relations against Defendants O'Hara, Foley and Tighe]**

135.    Plaintiff repeats and realleges paragraphs 1 through 134 as though fully set forth herein.

136.    NXIVM's current coach and client lists identify individuals who routinely participate in NXIVM's seminars and other events, and upon information and belief would be participating in future NXIVM courses and events, but for the conduct of Defendants as set forth above.

137.    By reason of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, but in an amount no less than one million dollars ($1,000,000.00).

**WHEREFORE**, Plaintiff NXIVM demands judgment as follows:

A.    On the first cause of action against all Defendants, compensatory damages in an amount to be proven at trial, and injunctive relief requiring Defendants to tender to Plaintiff all information and documents generated as a result of the unauthorized access and prohibiting Defendants from engaging in any further misconduct, including but not limited to making any further public disclosure of any information and documents generated as a result of the unauthorized access;

B.    On the second cause of action against all Defendants, the actual damages suffered by Plaintiff and any profits made by Defendants in an amount to be proven at trial, or alternatively not less than $1,000 per violation, plus punitive damages and Plaintiff's reasonable attorneys' fees and costs, and injunctive relief requiring Defendants to tender to Plaintiff all information and documents generated as a result of the unauthorized access

and prohibiting Defendants from engaging in any further misconduct, including but not limited to making any further public disclosure of any information and documents generated as a result of the unauthorized access;

C.     On the third, fourth, fifth and sixth causes of action against Defendants O'Hara, Foley and Tighe, compensatory and punitive damages in an amount to be proven at trial; and,

D.     Granting such other and further relief as the Court deems just and proper, together with the costs and disbursements of this action, including reasonable attorneys' fees.

DATED:  October 22, 2013

s/ Michael R. Wolford
Michael R. Wolford, Esq.
Laura A. Myers, Esq.
**THE WOLFORD LAW FIRM LLP**
600 Reynolds Arcade Building
16 East Main Street
Rochester, New York 14614
Telephone: (585) 325-8000
emails: mwolford@wolfordfirm.com
            lmyers@wolfordfirm.com

Pamela A. Nichols, Esq.
**O'CONNELL & ARONOWITZ, P.C.**
54 State Street
9th Floor
Albany, New York 12207
Telephone: (518) 462-5601
email: pnichols@Oalaw.com

*Attorneys for Plaintiff NXIVM Corporation*

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues triable to a jury.

DATED:  October 22, 2013

s/ Michael R. Wolford
Michael R. Wolford, Esq.
Laura A. Myers, Esq.
**THE WOLFORD LAW FIRM** LLP
600 Reynolds Arcade Building
16 East Main Street
Rochester, New York 14614
Telephone: (585) 325-8000
emails: mwolford@wolfordfirm.com
         lmyers@wolfordfirm.com


Pamela A. Nichols, Esq.
**O'CONNELL & ARONOWITZ, P.C.**
54 State Street
9th Floor
Albany, New York 12207
Telephone: (518) 462-5601
email: pnichols@Oalaw.com

*Attorneys for Plaintiff NXIVM Corporation*